## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **ANTHONY PROCOPIS** (d/b/a Slot It Golf), | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Civil Action No. _____** |
| **STEEPWARE LLC** (d/b/a Eyeline Golf) and **SAMUEL FROGGATTE,** | ) ) ) ) | **Patent Case** |
| Defendants. | ) ) | **Jury Trial Demanded** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Anthony Procopis, an individual sole proprietor doing business as Slot It Golf, ("Mr. Procopis"), files this Original Complaint for Patent Infringement against Steepware LLC (d/b/a EyeLine Golf), ("EyeLine Golf") and Samuel Froggatte (individually)("Froggatte"), (collectively "EyeLine Golf and Froggatte are referred to as the "Defendants"), and respectfully shows the Court as follows:

### NATURE OF THIS ACTION

1.      This is a patent infringement action.  Mr. Procopis has invented a new, novel, and nonobvious golf training aid that can be used with drivers, woods, and irons.  Mr. Procopis has been awarded two (2) Patents by the U.S. Patent and

Trademark Office ("USPTO**"**) directed to his golf training aid invention, namely U.S. Patent No. 10,695,641 and U.S. Patent No. 11,344,783.

2.      Mr. Procopis is a sole proprietor and runs Slot It Golf which is an endeavor to market and sell his patented golf training aid under the brand name "Slot It Golf."  Mr. Procopis' Slot It Golf training aid has been well received by the market and set the standard for golf swing aids.  As the market came to expect the versatility of a single swing aid for drivers, woods, and irons, Defendants responded by introducing its "Speed Trap 2.0" to address this market demand.

3.      Before filing this action, Mr. Procopis notified Defendants of his patent rights and included a copy of his issued patent and a claim chart evidencing how Defendants' Speed Trap 2.0 infringed his patent.  Defendants are well established in the golf training aid market and considered Mr. Procopis as a startup unworthy of any response.  Instead of responding to Mr. Procopis, Defendants made a conscious and deliberate decision to continue their infringing conduct unabated and, based on information and belief, increased their infringing activities. To do otherwise would have resulted in Defendants' surrendering significant market share and forgoing significant financial gain.

4.      Defendants deliberate and willful infringement of Mr. Procopis' patents has allowed Defendant EyeLine Golf to enjoy substantial sales it would

otherwise not have had, grown market share, and leverage Mr. Procopis' patented technology to extend its own brand at the expense of Mr. Procopis' and Slot It Golf's reputation as a market and technology innovator.   Moreover, Defendant Froggatte, as the owner, CEO, and manager of Defendant EyeLine Golf, aided, instructed, directed and controlled EyeLine Golf's infringing activities. Defendant Froggatte also, based upon information and belief, personally participated in the design, marketing and sale of the Speed Trap 2.0.  Defendant Froggatte personally profited from EyeLine Golf's infringing activities.

## **PARTIES**

5.    Plaintiff Anthony Procopis is an individual and a citizen of the Commonwealth of Australia residing in Palmwoods, Australia.  Mr. Procopis is a sole proprietor doing business as Slot It Golf.

6.    Defendant Steepware LLC is a Limited Liability Company organized and existing under the laws of Colorado.    Service may be effectuated on Defendant Steepware LLC's Registered Agent:

> Samuel Froggatte
> 2990 West 29th Street
> Suite 7
> Greeley, Colorado 80631

7.    Defendant Steepware LLC is doing business as Eyeline Golf.

8.     Defendant Samuel Froggatte is a citizen of the State of Colorado and may be served at: 2990 West 29th Street, Suite 7, Greeley, Colorado, 80631.



*Figure 1- EyeLine Golf CEO Sam Froggatte.  See https://eyelinegolf.com/pages/about*

9.     Defendant Froggatte is the owner and, based upon information and belief, manager of Defendant EyeLine Golf.  Defendant Froggatte also holds himself out as the Chief Executive Officer of Defendant EyeLine Golf.

## <u>JURISDICTION AND VENUE</u>

10.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a).

11.     Eyeline Golf is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Colorado Long-Arm Statute, due at least to its business in this forum, including maintaining, conducting, and

managing their business in this District at 2990 West 29th Street, Suite 7 in Greeley, Colorado.

12.    This Court has personal jurisdiction over Defendant Froggatte because he resides in this District and he is the owner, Chief Operating Officer, and based upon information and belief, Manager of Eyeline Golf, and he has personally engaged in the acts of infringement complained of herein and directed and/or controlled the acts of infringement complained of herein by EyeLine Golf. Defendant Froggatte's personal acts of infringement and his direction and control over the acts complained of herein in this Judicial District constituting patent infringement form a substantial part of the transactions, occurrences, events and/or omissions giving rise to Mr. Procopis' claims.

13.    Defendant Froggatte also, based upon information and belief, personally participated in acts of infringement in this Judicial District by designing, advertising, offering for sale, and selling products that constituted acts of patent infringement.

14.    Without limitation, within this state, Defendants have used, offered for sale, and sold the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, Defendants have derived revenue from their infringing acts occurring within Colorado.  Further, on

information and belief, Defendants are subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Colorado.  Furthermore, Defendants are subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Colorado.  Defendants have committed such purposeful acts and/or transactions in Colorado such that they reasonably should know and expect that they could be hauled into this Court as a consequence of such activity.

15.    Venue is proper in this district under 28 U.S.C. §1400(b).  EyeLine Golf maintains a place of business in this District at 2990 West 29th Street, Suite 7 in Greeley, Colorado.  Defendant Froggatte resides in this District.   Defendants have committed at least a portion of the infringements at issue in this case within this District.

16.    For these reasons, this Court has personal jurisdiction over the Defendants and venue is proper in this Court under 28 U.S.C. §1400(b).

## PATENTS-IN-SUIT

17.    U.S. Patent No. 10,695,641 ("the '641 Patent") was duly and legally issued by the USPTO on June 30, 2020.  The '641 Patent is entitled "Golf Training Aid to Help Golfers Achieve the Correct Angle-of-Attack."  A true and correct

copy of the '641 Patent is attached hereto as **Exhibit A** and incorporated herein by reference.

18.    Mr. Procopis owns all right, title and interest in the '641 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '641 Patent.  Accordingly, Mr. Procopis possesses the exclusive right and standing to prosecute the present action for infringement of the '641 Patent by Defendants.

19.    While the application for the '641 Patent was pending before the USPTO, the Patent Examiner expressly considered the Speed Trap 1.0 as prior art and determined that the invention claimed in the '641 Patent is patentably distinct from the Speed Trap 1.0.  Exhibit A, the '641 Patent, Other Publications:  Eyeline Golf Speed Trap, by Eyeline Golf, available from Amazon. com at Amazon. com at https://www.amazon.com/EyeLine-Golf-Speed-Carry-Eliminate/dp/B013SLXCTS, date unknown.  **Exhibit B** hereto is a true and accurate copy of the Amazon web page disclosing the Speed Trap 1.0 from the above cited URL.

20.    U.S. Patent No. 11,344,783 ("the '783 Patent") was duly and legally issued by the USPTO on May 31, 2022.  The '783 Patent is entitled "Golf Training

Aid." A true and correct copy of the '783 Patent is attached hereto as **Exhibit C** and incorporated herein by reference.

21.    Mr. Procopis owns all right, title and interest in the '783 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '783 Patent. Accordingly, Mr. Procopis possesses the exclusive right and standing to prosecute the present action for infringement of the '783 Patent by Defendants.

22.    The '783 Patent is a continuation of the '641 Patent. (Collectively the '641 Patent and the '783 Patent are the "Patents-in-Suit"). The prior art in the '641 Patent (parent application), including the references disclosing the Speed Trap 1.0, were also before the Patent Examiner in the application for the '783 Patent. *See* MPEP 609.02. The Patent Examiner therefore expressly considered the Speed Trap 1.0 as prior art in the application for the '783 Patent and determined that the invention claimed in the '783 Patent is patentably distinct from the Speed Trap 1.0.

23.    The Patents-in-Suit are directed to: "[a] golf training aid [that] helps train a correct golf swing path where for a short period of time, the club is swung straight through the ball and down the target-line for a period of 12 inches, 6 inches before and 6 inches after impact. The golf training aid [helps] golfers achieve this […] with all golf clubs." Ex. A, the '641 Patent, Abstract. "Four six-

inch angled polymer poles attach to a base made for driver and wood shots off a

tee, and iron and wood-shots off the ground. Feedback is provided when a player

hits or misses the poles." *Id*. "Angled poles are fixed to the base's external driver

and iron lines for use with the various clubs, and the ball is aligned with one of two

center lines, one line being for tee-shots and the other being for shots hit from the

ground." *Id*.



FIG. 1

Ex A, the '641 Patent, Fig. 1.

## ACCUSED DEVICE

24.    Defendants, without Mr. Procopis' authority and in violation of the Patents-in-Suit, have made, used, offered to sell, sold and/or imported the "Speed Trap 2.0" device throughout the United States and in this District by, among other things, making direct sales to customers, making sales to their authorized resellers, and by utilizing third-party online sales platforms such as Amazon.  The Amazon Standard Identification Number (ASIN) for the Speed Trap 2.0 is B07M5B3KNS.



*Figure 2 - Accused Device Speed Trap 2.0 - https://eyelinegolf.com/products/speed-trap*

## FACTUAL BACKGROUND

25.     Mr. Procopis is an individual sole proprietor doing business as Slot It Golf.  Mr. Procopis invented a golf swing training aid for use with drivers, woods and irons.  Mr. Procopis promotes and sells the Slot It Golf training aid through Amazon and other distribution channels.



*Figure 3 - Slot It Golf Swing Trainer*

26.     As a small start-up Mr. Procopis has invested in, and relied upon, patents to protect his invention from unauthorized copying.  EyeLine Golf's unauthorized copying and infringement of the Patents-in-Suit has stagnated the growth of Mr. Procopis' business because as a larger, well established, company

EyeLine Golf has been able to sell the Accused Device through its existing distribution channels to its existing customers and devote substantial financial resources to promoting the Accused Device.

<strong><u>The September 18th Notice Letter</u></strong>

27.    By letter dated September 18, 2020, Mr. Procopis notified Defendants in writing of the '641 Patent and provided a claim chart evidencing that the Accused Device infringed the '641 Patent. (the "September 18th Notice Letter"). A true and accurate copy of the September 18th Notice Letter is attached hereto as **<u>Exhibit D</u>** and incorporated by reference.

28.    The September 18th Notice Letter was delivered by electronic means to Defendants on or around Friday, September 18th, 2020.  A true and accurate copy of the Facebook Messenger Exchange is attached hereto as **<u>Exhibit E</u>**.  The following week, on Tuesday, September 22, 2020, Plaintiff also sent the September 18th Notice Letter to Defendants by Certified Mail.  Defendants received a hard copy of the September 18th Notice Letter by Certified Mail on September 25, 2020. A true and accurate copy of the Certified Mail Receipt and shipping receipt is attached hereto as **<u>Exhibit F</u>**.

29.    The September 18th Notice Letter provided Defendants with full knowledge of Mr. Procopis' patent rights, including the '641 Patent, and that the

Accused Device infringed the '641 Patent. Presented with evidence that the Accused Device infringes the '641 Patent, Defendants made a deliberate decision to continue their infringing conduct unabated. Moreover, based upon information and belief, Defendants increased their infringing activities after receiving the September 18th Notice Letter.

30. The Accused Device, based upon information and belief, has experienced significant commercial success, and represents Defendants' best-selling and most profitable product. Accordingly, Defendants were financially incentivized to continue their infringing conduct because to do otherwise would have resulted in Defendants losing significant market share, revenue and profits. Defendants, with full knowledge that the Accused Device infringed the Patents-in-Suit, therefore made a deliberate, conscious, decision to continue their infringing conduct unabated. Moreover, based upon information and believe, Defendants' sales of the Accused Products increased after their receipt of the September 18th Notice Letter.

31. Patents are commonly used in the golf equipment industry to protect products from unauthorized copying.

32. Defendants have used patents to protect their own products from copying. For example, Defendant Foggatte is identified as the inventor of U.S.

Patent No. 6,726,576 entitled "Golf Stance Foot Alignment, Ball Position and Club Face Square Guide."  As a further example, Defendant Froggatte is identified as the inventor of U.S. Patent No. 6,840,870 entitled "Alignment Guide for Practice Putting."  EyeLine Golf advertised and promoted its "Classic Putting Mirror Training Aid" on Amazon as being "Patented."  *See* Amazon.com : EyeLine Golf Patented Classic Putting Mirror Training Aid - Portable Putting Trainer for Games Drills. Mirror Size 9.25 x 17.5 in. As seen on PGA Tour. Made in USA. Use Outdoors or Indoor Putting mat : Golf Training Aids : Sports & Outdoors.

33.    The Accused Product includes a "patent pending" notice.  Upon information and believe, the USPTO has not issued either Defendant a patent covering or directed to the Accused Product.

34.    Defendants have also relied on Federal Trademark registrations to prevent others from copying their marks for (1) SPEED TRAP (Reg. No. 5,679,335); (2) EYELINE GOLF (Reg. No. 5,839,446); (3) ROLL THE ROCK (Reg. No. 5,839,448); and other pending applications.

**First Cause of Action**
**(Patent Infringement of the '641 Patent)**

35.    The allegations stated in the preceding paragraphs are incorporated by reference as though fully set forth herein.

36.    Mr. Procopis owns all right, title and interest in the '641 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '641 Patent. Accordingly, Mr. Procopis possesses the exclusive right and standing to prosecute the present action for infringement of the '641 Patent by Defendants.

37.    Mr. Procopis' Slot It Golf product provides notice that it is a patented article. Moreover, Mr. Procopis's web page for the Slot It Golf product has a page identifying the specific patents he has received related to the Slot It Golf product.

https://www.slotitgolf.com/pages/patent   Mr. Procopis has therefore fully complied with the patent marking requirements of 35 U.S.C. §287.

38.    Moreover, the September 18th Notice Letter provided Defendants actual notice of the '641 Patent and that the Accused Device infringed the '641 Patent.

39.    Defendant Froggatte is the owner, Chief Executive Officer and, based upon information and belief, Manager of EyeLine Golf. As the owner, CEO and Manager of EyeLine Golf, Defendant Foggatte aided, instructed, directed and controlled EyeLine Golf's infringing activities. Defendant Froggatte has also designed, made, used, offered for sale and sold the Accused Device that infringes the '641 Patent. For example, based upon information and belief, Defendant

15

Froggatte narrated and appeared in the videos using, promoting, and offering the
Accused Device for sale: "Meet the New Speed Trap 2.0 – Get Ready!!"; "Speed
Trap 2.0 – Spinning Pitch Shot"; "Speed Trap Progression Swings"; "Speed Trap
True Confessions"; "Speed Trap-Step One"; "Tether to Speed Trap Rod
Attachment"; "Installing and Removing Speed Trap Rod Tethers"; "Preparing To
Compete – Not Just Attend"; "Building Your Plan to Compete – Not Just Attend",
and more.



*Figure 4- EyeLine Golf Preparing to Compete - Not Just Attend – See Speed Trap 2.0 at  2:25 to 2:35.*

40.    EyeLine Golf has made, used, sold, offered to sell and/or imported the
Accused Device that infringes the '641 Patent.  The Accused Device contains all of

the elements of at least Claim 1 of the '641 Patent.[1] **Exhibit G** hereto, which is

incorporated by reference, is a Claim Chart showing were each element of Claim 1

of the '641 Patent is in the Accused Device.

41.    To the extent the preamble to Claim 1 is found to be limiting, the

Accused Devices is "[a] golf training aid for practicing swings with an iron and

with a driver" *See* Exhibit G, Element 1.

42.    The Accused Device has "a U-shaped base having a first arm and a

second arm parallel to the first arm." *See* Exhibit G, Element 1[A].

43.    The Accused Device has "the first arm and second arm being

connected at a connecting portion to form a U-shaped structure having an open

interior between the first arm and the second arm so that when the base is placed

on the ground, the ground is exposed within the open interior." *See* Exhibit G,

Element 1[B].

44.    The Accused Device has "a plurality of poles, each pole having a base

selectively attachable to the U-shaped base." *See* Exhibit G, Element 1[C].

45.    The Accused Device includes "wherein the U-shaped base includes a

target line, a pair of external pole-positioning lines, and a pair of interior pole-

---

[1] Plaintiff identifies Claim 1 of the '641 Patent as being infringed at this time for pleading purposes.  Pursuant to D.C. COLO. LPtR 4(b)((1) Plaintiff reserves the right to identify other and /or additional infringed claims in his infringement contentions.

positioning lines inside and parallel to the external pole-positioning lines." *See* Exhibit G, Element 1[D].

46.     The Accused Device also includes "whereby the poles are attachable to the U-shaped base along the interior pole-positioning lines when swings with an iron are to be practiced and wherein the poles are attachable to the U-shaped base along the exterior pole-positioning lines when swings with a driver are to be practiced." *See* Exhibit G, Element 1[E].

47.     The Accused Device contains all of the elements of at least Claim 1 of the '641 Patent.  By making, using, offering for sale, selling and/or importing the Accused Device, Defendants have injured Mr. Procopis and are liable to him for directly infringing one or more claims of the '641 Patent, including at least Claim 1, pursuant to 35 U.S.C. §271(a), literally or under the doctrine of equivalents.

48.     Defendants have and continue to indirectly infringe the '641 Patent by inducing others to infringe one or more claims of the '641 Patent through making, using, selling, offering for sale, distributing, and/or importing the Accused Device. For example, EyeLine Golf's customers and distributors directly infringe the '641 Patent by selling, offering for sale, using, or importing into the United States the Accused Device, including the State of Colorado and this District.  For another example, Defendant Froggatte has directed and controlled Eyeline Golf's direct

infringement of the '641 Patent by its making, using, offering for sale, and selling the Accused Product.

49.    Defendants have been aware of the '641 Patent since at least the service of the September 18th Notice Letter.  EyeLine Golf was aware that its actions to importers, distributors, resellers, wholesalers, retailers, and/or end-users of the Accused Device would induce infringement.  Defendant Froggatte was aware that his actions directing EyeLine Golf's making, using, offering for sale, and selling of the Accused Device would induce infringement.

50.    Despite Defendants' awareness of the '641 Patent and its coverage, including the claim chart in the September 18th Notice Letter evidencing infringement of the '641 Patent by the Accused Device, Defendants continued to take active steps (*e.g.* manufacturing, purchasing, promoting, offering for sale, and selling the Accused Device, as well as distributing product manuals, instructions, promotional and marketing materials, instructional videos, and/or technical and promotional materials to distributors, resellers, wholesalers, retailers, and end-users) to encourage others to infringe the '641 Patent, with the specific intent to induce such infringement.  Accordingly, Defendants have known and intended that the Accused Product infringe the '641 Patent and that Defendants' continued actions would actively induce the infringement of the '641 Patent.

51.    Mr. Procopis has been damaged by Defendants' infringement of the '641 Patent and is suffering and will continue to suffer irreparable harm and damage as a result of this infringement unless such infringement is enjoined by this Court.

52.    Defendants have committed and continue to commit acts of infringement that Defendants knew or should have known constituted an unjustifiably high risk of infringement of the '641 Patent.  Defendants have been on notice that the Accused Device infringes the '641 Patent since at least receipt of the September 18th Notice Letter.

53.    Defendants' infringement of the '641 Patent has allowed EyeLine Golf to enjoy substantial sales it would otherwise not have had, grown market share, and leverage Mr. Procopis' patented technology to extend its own brand at the expense of Mr. Procopis' and Slot It Golf's reputation as a market and technology innovator.  Defendant Froggatte has personally profited from EyeLine Golf's infringing activities.    This action, therefore, is "exceptional" within the meaning of 35 U.S.C. §285.

**Second Cause of Action
(Infringement of the '783 Patent)**

54.    The allegations stated in the preceding paragraphs are incorporated by reference as though fully set forth herein.

55.    Mr. Procopis owns all right, title and interest in the '783 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '783 Patent.  Accordingly, Mr. Procopis possesses the exclusive right and standing to prosecute the present action for infringement of the '783 Patent by Defendants.

56.    Mr. Procopis' Slot It Golf product provides notice that it is a patented article.  Moreover, the Slot It Golf web page has a page identifying the specific patents he has received related to the Slot It Golf product. https://www.slotitgolf.com/pages/patent   Mr. Procopis has therefore fully complied with the patent marking requirements of 35 U.S.C. §287.

57.    The September 18th Notice Letter also provided Defendants actual notice of Mr. Procopis' patent rights, which are also specifically identified by U.S. Patent number on Slot It Golf's web page.  Defendants have been aware of the '783 Patent since at least the service of this Complaint.

58.    Defendant Froggatte is the owner, Chief Executive Officer and, based upon information and belief, Manager of EyeLine Golf.  As the owner, CEO and Manager of EyeLine Golf, Defendant Foggatte aided, instructed, directed and controlled EyeLine Golf's infringing activities.  Defendant Froggatte has also designed, made, used, offered for sale and sold the Accused Device that infringes

the '783 Patent.  For example, based upon information and belief, Defendant Froggatte narrated and appeared in the videos using, promoting, and offering the Accused Device for sale: "Meet the New Speed Trap 2.0 – Get Ready!!"; "Speed Trap 2.0 – Spinning Pitch Shot"; "Speed Trap Progression Swings"; "Speed Trap True Confessions"; "Speed Trap-Step One"; "Tether to Speed Trap Rod Attachment"; "Installing and Removing Speed Trap Rod Tethers"; "Preparing To Compete – Not Just Attend"; "Building Your Plan to Compete – Not Just Attend", and more.



*Figure 5- EyeLine Golf Preparing to Compete - Not Just Attend – See Speed Trap 2.0 at  2:25 to 2:35.*

59.    EyeLine Golf has made, used, sold, offered to sell and/or imported the Accused Device that infringes the '783 Patent.  The Accused Device contains all of

the elements of at least Claim 1 of the '783 Patent.[2]  **Exhibit H** hereto, which is

incorporated by reference, is a Claim Chart showing were each element of Claim 1

of the '783 Patent is in the Accused Device.

60.    To the extent the preamble to Claim 1 is found to be limiting, the

Accused Devices is "[a] golf training aid for practicing swings" *See* Exhibit H,

Element 1.

61.    The Accused Device has "a U-shaped base having a first arm and a

second arm parallel to the first arm." *See* Exhibit H, Element 1[A].

62.    The Accused Device has "the first arm and second arm being

connected at a connecting portion to form a U-shaped structure having an open

interior between the first arm and the second arm so that when the base is placed

on the ground, the ground is exposed within the open interior." *See* Exhibit H,

Element 1[B].

63.    The Accused Device has "a plurality of poles, each pole having a base

selectively attachable to the U-shaped base." *See* Exhibit H, Element 1[C].

64.    The Accused Device has "wherein the U-shaped base includes a target

line, a pair of external pole-positioning lines, and a pair of interior pole-positioning

---

[2] Plaintiff identifies Claim 1 of the '783 Patent as being infringed at this time for pleading purposes.  Pursuant to D.C. COLO. LPtR 4(b)((1) Plaintiff reserves the right to identify other and /or additional infringed claims in his infringement contentions.

lines inside and parallel to the external pole-positioning lines." *See* Exhibit H, Element 1[D].

65.    The Accused Device has "wherein the poles are attachable to the U-shaped base along the interior pole-positioning lines when swings are to be practiced and wherein the poles are attachable to the U-shaped base along the exterior pole-positioning lines when other swings are to be practiced." *See* Exhibit H, Element 1[E].

66.    The Accused Device contains all of the elements of at least Claim 1 of the '783 Patent.  By making, using, offering for sale, selling and/or importing the Accused Device, Defendants have injured Mr. Procopis and are liable to him for directly infringing one or more claims of the '783 Patent, including at least Claim 1, pursuant to 35 U.S.C. §271(a), literally or under the doctrine of equivalents.

67.    Defendants have and continue to indirectly infringe the '783 Patent by inducing others to infringe one or more claims of the '783 Patent through making, using, selling, offering for sale, distributing, and/or importing the Accused Device.  For example, EyeLine Golf's customers and distributors directly infringe the '783 Patent by selling, offering for sale, using, or importing into the United States the Accused Device, including the State of Colorado and this District.  For another example, Defendant Froggatte has directed and controlled Eyeline Golf's

direct infringement of the '783 Patent by its making, using, offering for sale, and selling the Accused Product.

68.     Defendants have been aware of Mr. Procopis' patent rights since at least the service of the September 18th Notice Letter and the '783 Patent since at least the service of the Complaint.  EyeLine Golf was aware that its actions to importers, distributors, resellers, wholesalers, retailers, and/or end-users of the Accused Device would induce infringement.  Defendant Froggatte was aware that his actions directing EyeLine Golf's making, using, offering for sale, and selling of the Accused Device would induce infringement.

69.     Despite Defendants' awareness of the '783 Patent and its coverage, Defendants continued to take active steps (*e.g.* manufacturing, purchasing, promoting, offering for sale, and selling the Accused Device, as well as distributing product manuals, instructions, promotional and marketing materials, instructional videos, and/or technical and promotional materials to distributors, resellers, wholesalers, retailers, and end-users) to encourage others to infringe the '783 Patent, with the specific intent to induce such infringement.  Accordingly, Defendants have known and intended that the Accused Product infringe the '783 Patent and that Defendants' continued actions would actively induce the infringement of the '783 Patent.

70.    Mr. Procopis has been damaged by Defendants' infringement of the '783 Patent and is suffering and will continue to suffer irreparable harm and damage as a result of this infringement unless such infringement is enjoined by this Court.

71.    Defendants have committed and continue to commit acts of infringement that Defendants knew or should have known constituted an unjustifiably high risk of infringement of the '783 Patent.

72.    Defendants' infringement of the '783 Patent has caused EyeLine Golf to enjoy substantial sales it would otherwise not have had, grown market share, and leverage Mr. Procopis' patented technology to extend its own brand at the expense of Mr. Procopis' and Slot It Golf's reputation as a market and technology innovator.  Defendant Froggatte has personally profited from EyeLine Golf's infringing activities.    This action, therefore, is "exceptional" within the meaning of 35 U.S.C. §285.

**Jury Demand**

73.    Mr.  Procopis demands trial by jury of all issues so triable in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, for the reasons set forth above, Plaintiff Mr. Procopis respectfully requests that this Court enter judgment in his favor, and against Defendants, jointly and severally, and award relief including, but not limited to, the following:

A.    A judgment that Defendants have infringed the '641 Patent and the '783 Patent;

B.    An order preliminarily and permanently enjoining Defendants from further acts of infringement of the '641 Patent and the '783 Patent;

C.    An award of damages adequate to compensate Plaintiff Mr. Procopis for all of Defendants' unauthorized acts of infringement;

D.    A declaration that this case is exceptional within the meaning of 35 U.S.C. §285 and award of treble damages and Plaintiff Mr. Procopis reasonable attorneys' fees and other costs and expenses incurred in the prosecution of this action;

E.    An award of pre-judgement interest under 35 U.S.C.§284, and post-judgement interest under 28 U.S.C. §1961; and,

F.    An award of any other or further relief this Court deems just and proper.

Respectfully submitted,


/s/ Luke Anderson
Luke Anderson
    (GA Bar No. 018330 –
    Admitted to the District of Colorado)
**ATLANTA TECHNOLOGY LAW
(LUKE ANDERSON P.C.)**
1050 Crown Pointe Parkway, Ste. 500
Atlanta, GA 30338-7702
Tel.  404-991-2241
Fax.  404-935-0927
Landerson@atltechlaw.com

## NOTICE TO DEFENDANTS OF LITIGATION HOLD REQUIREMENT

1.    The Defendants are hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that the Defendants know, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "**Potential Evidence**").  This includes without limitation all information relating to or otherwise evidencing the conception, design, development, the manufacturing, sale and profitability of the Speed Trap 1.0 and Speed Trap 2.0.

2.    As used above, the phrase "**electronically stored information**" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including by not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails, text files (including drafts, revisions, and active or deleted word processing documents), instant messages, text messages, SMS

messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored. These sources may also include any personal electronic, digital, and storage devices of any and all of the Departed Employees and/or Fictitious Defendants family, agents or employees if the Departed Employees and/or Fictitious Defendants electronically stored information resides there. Potential Evidence also includes social media postings (*e.g.* Facebook, Instagram, LinkedIn, Snapchat and the like) and private messages sent or received using social media platforms.

3.    The Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not favorable to the Defendants claims and/or defenses. To avoid such a result, the Defendants' preservation duties include, but are

not limited to, the requirement that the Defendants immediately notify their employers, agents and employees to halt and/or suspend the auto-delete functions of the Defendants' electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.