IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02621-PAB-NRN

ANTHONY PROCOPIS, d/b/a SLOT IT GOLF,

    Plaintiff,

v.

STEEPWARE LLC, d/b/a EYELINE GOLF, and
SAMUEL FROGGATTE,

    Defendants.

---

## ORDER

---

This matter comes before the Court on Defendants Steepware LLC's (d/b/a Eyeline Golf) and Samuel Froggatte's Motion for Summary Judgment Regarding Invalidity of U.S. Patent No. 10,695,641 and U.S. Patent No. 11,344,783 [Docket No. 35], Plaintiff's Motion for Leave to File a Surreply in Opposition to Defendant's Reply in Their Motion for Summary Judgment Regarding Invalidity of U.S. Patent No. 10,695,641 and U.S. Patent No. 11,344,783 [Docket No. 59] and Plaintiff's Motion for Leave to File a Supplemental Statement of Facts Opposition to Defendant's Motion for Summary Judgment Regarding Invalidity of 10,695,641 and U.S. Patent No. 11,344,783 [Docket No. 62].  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## I. PROCEDURAL HISTORY

Plaintiff Anthony Procopis[1] initiated this action on October 7, 2022, bringing two claims of patent infringement against defendants Steepware LLC ("Steepware") and Samuel Froggatte. Docket No. 1 at 14-26, ¶¶ 35-72. The complaint alleges that a golf training aid sold by defendants, the "Speed Trap 2.0," infringes claim 1 of two patents that Mr. Procopis owns, U.S. Patent No. 10,695,641 ("'641 Patent"), issued June 30, 2020, and U.S. Patent No. 11,44,783 ("'783 Patent"), issued May 31, 2022, (together, "Mr. Procopis' patents"). *Id.* at 1-3, ¶¶ 1-4; Docket No. 1-1 at 2; Docket No. 1-3 at 2. Defendants filed counterclaims alleging one claim of copyright infringement and seeking declaratory judgments that claim 1 of Mr. Procopis' patents is invalid. Docket No. 64 at 23-31, ¶¶ 38-65. Defendants allege that claim 1 of each of Mr. Procopis' patents is invalid under 35 U.S.C. § 102(a)(1) because such claims are anticipated by the "Speed Trap 1.0," a golf training aid that defendants have sold to the public since 2013. *Id.* at 18, ¶¶ 18-19; Docket No. 35 at 11, 16. Defendants allege that claim 1 of each of Mr. Procopis' patents is therefore invalid and unenforceable against the Speed Trap 2.0. Docket No. 64 at 11. Defendants further allege that Mr. Procopis' training aid, the Slot It

---

[1] Mr. Procopis was initially represented by counsel in this case, *see* Docket No. 1 at 28, but his attorney withdrew on January 26, 2023. Docket No. 32 at 1. Although Mr. Procopis has since retained other counsel, *see* Docket Nos. 53, 56, 73, 74, Mr. Procopis filed the response to defendants' motion for summary judgment, Docket No. 55, motion for leave to file a surreply, Docket No. 59, and motion for leave to file a supplemental statement of facts, Docket No. 62, pro se. The Court will construe Mr. Procopis' pro se pleadings liberally without serving as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court will evaluate Mr. Procopis' arguments to the extent that they are sufficiently developed for the Court to understand them.

Golf Swing-Trainer, infringes the Speed Trap 1.0's copyrighted design artwork.  *Id*. at 29, ¶ 57.

Defendants filed a motion for summary judgment on their invalidity counterclaims.  Docket No. 35 at 16.  Mr. Procopis responded, Docket No. 55, and defendants replied.[2]  Docket No. 58.

## II.  UNDISPUTED FACTS[3]

The Speed Trap 1.0 has been offered for sale since November 26, 2013.  Docket No. 35 at 3, ¶ 1.  It includes the following features: (1) a U-shaped base; (2) five lines on the U-shaped base, consisting of (a) a target line, (b) a pair of external pole-positioning lines, and (c) a pair of interior pole-positioning lines that are parallel to the external pole-positioning lines; and (3) a plurality of poles that are (4) selectively attachable to the base along the interior and exterior pole-positioning lines.  *Id*. at 6, ¶ 4.  A set of forward poles and a set of rearward poles can be attached to the touch fasteners on the U-shaped base.  Docket No. 55 at 8-9, ¶¶ 7-8.  Although the rearward poles can be attached to the base along either the exterior or interior pole-positioning lines, the forward poles can only be attached along the interior pole-positioning lines.  *Id*.  The

---

[2] Mr. Procopis filed a motion seeking leave to file a surreply, Docket No. 59, and a motion seeking leave to file a "supplemental statement of facts."  Docket No. 62.  Mr. Procopis seeks to file a surreply to challenge defendants' characterization of the prosecution history of the '641 Patent.  Docket No. 59 at 2-4.  The Court does not rely on the prosecution history of the '641 Patent to rule on defendants' motion for summary judgment and will therefore deny Mr. Procopis' motion to file a surreply.  Mr. Procopis seeks to file a "supplemental statement of facts" concerning a patent he is currently prosecuting because Mr. Procopis "assumes that the court would want to know" about it.  Docket No. 62 at 2.  The filing of a "supplemental statement of facts" is not permitted under the Local Rules or the Court's practice standards.  Therefore, the Court will deny Mr. Procopis' motion to file a supplemental statement of facts.

[3] The following facts are undisputed unless otherwise noted.

'641 Patent and the '783 Patent have an effective filing date of February 15, 2018.

Docket No. 35 at 7, ¶ 7.

### III.  CLAIM 1 OF MR. PROCOPIS' PATENTS

Claim 1 of the '641 Patent discloses:

> A golf training aid for practicing swings with an iron and with a driver, the golf training aid comprising:
> a U-shaped base having a first arm and a second arm parallel to the first arm, the first arm and second arm being connected at a connecting portion to form a U-shaped structure having an open interior between the first arm and the second arm so that when the base is placed on the ground, the ground is exposed within the open interior, and
> a plurality of poles, each pole having a base selectively attachable to the U-shaped base,
> wherein the U-shaped base includes a target line, a pair of external pole-positioning lines, and a pair of interior pole-positioning lines inside and parallel to the external pole-positioning lines, whereby the poles are attachable to the U-shaped base along the interior pole-positioning lines when swings with an iron are to be practiced and wherein the poles are attachable to the U-shaped base along the exterior pole-positioning lines when swings with a driver are to be practiced.

Docket No. 35-15 at 7.[4]  Claim 1 of the '783 Patent discloses:

> A golf training aid for practicing swings, the golf training aid comprising:
> a U-shaped base having a first arm and a second arm parallel to the first arm, the first arm and second arm being connected at a connecting portion to form a U-shaped structure having an open interior between the first arm and the second arm so that when the base is placed on the ground, the ground is exposed within the open interior, and
> a plurality of poles, each pole having a base selectively attachable to the U-shaped base,
> wherein the U-shaped base includes a target line, a pair of external pole-positioning lines, and a pair of interior pole-positioning lines inside and parallel to the external pole-positioning lines, wherein the poles are attachable to the U-shaped base along the interior pole-positioning lines when swings are to be practiced and wherein the poles are attachable to the U-shaped base along the exterior pole-positioning lines when other swings are to be practiced.

---

[4] Mr. Procopis does not dispute the authenticity of the patents attached as exhibits to defendants' summary judgment motion.  Docket No. 55 at 4, ¶ 9.

4

Docket No. 35-16 at 7. Both patents include the following diagrams:



Docket No. 35-15 at 3-4; Docket No. 35-16 at 3-4. On these diagrams, the interior pole-positioning lines are labeled 190 and the exterior pole-positioning lines are labeled 185. Docket No. 35-15 at 7; Docket No. 35-16 at 7. The center target line is labeled 170. Docket No. 35-15 at 6; Docket No. 35-16 at 7.

## IV. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is

5

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The non-moving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

Under 35 U.S.C. § 282(a), patents are presumed valid and the burden of establishing invalidity rests on the party asserting invalidity. An alleged infringer asserting an invalidity defense must overcome this presumption by "persuad[ing] the factfinder of its invalidity defense by clear and convincing evidence." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 97 (2011).

## V. ANALYSIS

### A. Claim Construction

Mr. Procopis argues that claim construction is necessary to resolve the motion for summary judgment, noting that claim construction had not yet occurred by the time defendants filed their motion for summary judgment. Docket No. 55 at 12. The parties completed claim construction briefing on September 26, 2023. Docket No. 77. Counsel for Mr. Procopis entered appearances on September 11, 2023. Docket Nos. 73, 74. Accordingly, Mr. Procopis' responsive claim construction brief, filed September 15, 2023, was filed by counsel. Docket No. 75.

Although the parties' joint disputed claim terms chart identified five disputed terms— "along," "poles," "base," "slot," and "external pole-positioning lines"— Docket No. 68 at 3-4, the parties now agree that "poles," "base," "slot," and "external pole-positioning lines" do not require the Court's construction. Docket No. 75 at 1-2; Docket No. 76 at 2. The construction of "along" is not necessary for the resolution of defendants' summary judgment motion. Therefore, the Court will not construe "along" as used in claim 1 of Mr. Procopis' patents.

### B. Patent Invalidity

As a preliminary matter, the Court takes up Mr. Procopis' argument concerning the prosecution history of his patents. Mr. Procopis appears to argue that, to overcome the presumption of the patents' validity, defendants must demonstrate by clear and convincing evidence that the patent examiner "failed to properly consider the Speed Trap 1.0" while examining Mr. Procopis' patents. Docket No. 55 at 13-14. However, Mr. Procopis cites no legal authority establishing this requirement, and the Court is

7

aware of none. Moreover, "a court is not bound by the [patent examiner's] actions and must make its own independent determination of patent validity." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005) (citing *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 960 (Fed. Cir. 1997)). Accordingly, the Court will conduct its own analysis as to whether the Speed Trap 1.0 anticipates claim 1 of Mr. Procopis' patents.

Defendants argue that the Speed Trap 1.0 discloses all of the claimed elements of claim 1 of each of Mr. Procopis' patents, rendering claim 1 of Mr. Procopis' patents invalid. Docket No. 35 at 10. Under 35 U.S.C. § 102(a)(1), a patent is invalid if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). A patent is invalid as anticipated under this statute if "a prior art reference disclose[s] every limitation of the claimed invention." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1381 (Fed. Cir. 2007); *see also Arbutus Biopharma Corp. v. ModernaTX, Inc.*, 65 F.4th 656, 662 (Fed. Cir. 2023) ("A claim is anticipated if each and every element as set forth in the claim is found, either expressly or inherently, in a single prior art reference.") (citation omitted). "Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact . . . [and] no reasonable jury could find that the patent is not anticipated." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001) (citing *Gen. Elec. Co., Ltd., v. Nintendo Co., Ltd.*, 179 F.3d 1350, 1353 (Fed. Cir. 1999)).

It is undisputed that the Speed Trap 1.0 has been offered for sale since November 26, 2013.  Docket No. 35 at 3, ¶ 1.  It is also undisputed that Mr. Procopis' patents have an effective filing date of February 15, 2018.  *Id.* at 7, ¶ 7.  Because the Speed Trap 1.0 was on sale before the effective filing date of Mr. Procopis' patents, claim 1 of Mr. Procopis' patents is invalid if every element as set forth in claim 1 is found in the Speed Trap 1.0.  *See Arbutus Biopharma*, 65 F.4th at 662; 35 U.S.C. § 102(a)(1).

Claim 1 of the '641 Patent requires four elements: (1) a U-shaped base that includes (2) "a target line, a pair of external pole-positioning lines, and a pair of interior pole-positioning lines inside and parallel to the external pole-positioning lines;" and (3) a "plurality of poles, each pole having a base selectively attachable to the U-shaped base;" (4) "whereby the poles are attachable to the U-shaped base along the interior pole-positioning lines when swings with an iron are to be practiced and wherein the poles are attachable to the U-shaped base along the exterior pole-positioning lines when swings with a driver are to be practiced."  Docket No. 35-15 at 7.  Claim 1 of the '783 Patent differs from the '641 Patent only in that the fourth element requires a plurality of poles to be "attachable to the U-shaped base along the interior pole-positioning lines when swings are to be practiced and wherein the poles are attachable to the U-shaped base along the exterior pole-positioning lines when other swings are to be practiced."  Docket No. 35-16 at 7; *see also* Docket No. 35 at 7, ¶ 6.

It is undisputed that the Speed Trap 1.0 includes (1) a U-shaped base that; (2) includes a target line, a pair of exterior pole-positioning lines, and a pair of interior pole-positioning lines that are parallel to the external pole-positioning lines; and (3) a plurality of poles that are; (4) selectively attachable to the base along the interior and exterior

9

pole-positioning lines.  Docket No. 35 at 6, ¶ 4.  It is also undisputed that the Speed Trap 1.0 includes a set of rearward poles that can be attached along the exterior or interior pole-positioning lines and a set of forward poles that can only be attached along the interior pole-positioning lines.  Docket No. 55 at 8-9, ¶¶ 7-8.

The parties' disagreement is limited to whether the Speed Trap 1.0 discloses "a plurality of poles . . . wherein the poles are attachable to the U-shaped base along the exterior pole-positioning lines."  *See* Docket No. 35-15 at 7; Docket No. 35-16 at 7.  Defendants argue that the Speed Trap 1.0 discloses this element because its two rearward poles are attachable along the exterior pole-positioning lines.  Docket No. 58 at 9-10.  Defendants claim that "plurality" should be interpreted to mean "two or more," arguing that "the claimed 'plurality of poles' is satisfied by two poles."  *Id.* at 9.  According to defendants, the fact that the Speed Trap 1.0's forward poles cannot be positioned along the exterior pole-positioning lines is immaterial because "the existence of two (i.e. a "plurality") of poles that meet the claim limitation is all that is needed for invalidity."  *Id.*

Mr. Procopis claims that his patents "require[ ] that the poles be attachable along the interior pole-positioning lines and along the exterior pole-positioning lines," arguing that the "Speed Trap 1.0 lacks this feature because the Speed Trap 1.0 includes two poles, the forwardmost two poles, that are not positionable along the exterior pole-positioning lines."  Docket No. 55 at 15-16.  According to Mr. Procopis, defendants have failed to show patent invalidity because they "have failed to provide any evidence showing 'the poles' (and not just some of the poles) being positionable along both the interior pole-positioning line and the exterior pole-positioning line."  *Id.* at 16-17.  Mr.

10

Procopis does not address the meaning of the term "plurality" as used in claim 1 of his patents or explain why the phrase "the poles," as used in claim 1 of his patents, should be interpreted to require more than two poles that are positionable along the exterior pole-positioning lines.

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004)). "[T]he words of a claim are generally given their ordinary and customary meaning." *Id.* (internal quotation marks and citations omitted). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313. Here, the parties disagree as to whether the claim element of "a plurality of poles . . . wherein the poles are attachable . . . along the exterior pole-positioning lines," *see* Docket No. 35-15 at 7; Docket No. 35-16 at 7, is satisfied by two poles that are attachable along the exterior pole-positioning lines. *See* Docket No. 55 at 15-18; Docket No. 58 at 9-10. In order to determine the meaning of this element of the claim, the Court must construe "plurality of poles."

The Federal Circuit has held that "'plurality,' when used in a claim, refers to two or more items, absent some indication to the contrary." *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 1327-28 (Fed. Cir. 2001) (citing *York Prods., Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1575 (Fed. Cir. 1996)); *see also Salazar v. AT&T Mobility LLC,* 2020 WL 5608640, at *9 (E.D. Tex. 2020) (holding that "plurality" has a "plain and ordinary meaning of 'two or more'"); *In re 55 Brake LLC*, 608

Fed. App'x 942, 944 (Fed. Cir. 2015) (unpublished) (same).  Courts apply the same interpretation to the use of a plural word such as "poles," concluding that the "plural form of a word typically refers to at least two of the named elements."  *Shire Dev. LLC v. Osmotica Kereskedelmi és Szolgáltató Kft*, 2013 WL 11740203, at *12 (N.D. Ga. Sep. 25, 2013) (citations omitted); *see also Leggett & Platt v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) ("the claim recites 'support wires' in the plural, thus requiring more than one welded 'support wire'"); *Medtronic, Inc. v. Guidant Corp.,* 2004 WL 1179338, at *19 (D. Minn. May 25, 2004) ("The plural form of a word pertains to more than one.") (internal quotation marks, alteration, and citation omitted).

      Although the context in which a patentee uses "plurality" or a plural word can support a different interpretation than "two or more," *see Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004), Mr. Procopis fails to identify any context that would support an interpretation of "plurality of poles," as it is used in claim 1 of his patents, that differs from its plain meaning, "two or more poles."[5]  Moreover, Mr.

---

[5] Mr. Procopis appears to assume that, when used with a driver, claim 1 of his patents requires that at least two poles are attached to each exterior pole-positioning line.  *See* Docket No. 55 at 17-18.  This assumption is consistent with the specifications of Mr. Procopis' patents, which state that the "disclosed device is unique . . . because it provides: [ ] the ability for the user to practice the most important long range club in golf: the driver."  *See* Docket No. 35-15 at 6; Docket No. 35-16 at 6.  However, this requirement is not written into claim 1 of either patent.  Claim 1 of the '641 Patent requires only that a "plurality of poles" be attachable to the exterior pole-positioning "lines" when swings with a driver are to be practiced.  *See* Docket No. 35-15 at 7.  Claim 1 of the '783 Patent does not mention the use of a driver at all.  *See* Docket No. 35-16 at 7.  Mr. Procopis stops short of arguing that defendants' proposed interpretation of "plurality of poles" would frustrate the purpose of the device, but even if he did advance this argument, the Court would still interpret "plurality of poles" to mean two or more poles.  The Federal Circuit has "repeatedly and consistently . . . recognized that courts may not redraft claims, whether to make them operable or to sustain their validity."  *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (collecting cases).  Therefore, the Court will "construe the claim as written, not as the patentee[ ]

Procopis may not benefit from the principle that patent claims should be construed to preserve their validity because that principle applies only when "the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous." *Phillips*, 415 F.3d at 1327.

For the reasons stated above, the Court finds that "plurality of poles," as used in claim 1 of Mr. Procopis' patents, means two or more poles. Because it is undisputed that the Speed Trap 1.0 includes two or more poles that are attachable along the external pole-positioning lines, the Court finds that there is no genuine dispute of fact that the Speed Trap 1.0 includes "a plurality of poles . . . wherein the poles are attachable to the U-Shaped base along the exterior pole-positioning lines." *See* Docket No. 35-15 at 7; Docket No. 35-16 at 7. Therefore, the Court finds that, because every element of claim 1 of Mr. Procopis' patents is present in the Speed Trap 1.0, the Speed Trap 1.0 anticipates claim 1 of Mr. Procopis' patents, rendering claim 1 in each patent invalid. 35 U.S.C. § 102(a)(1).

### C.  Patent Infringement

Mr. Procopis brings two claims of patent infringement against defendants, alleging that the Speed Trap 2.0 infringes on claim 1 of each of Mr. Procopis' patents. Docket No. 1 at 14-26, ¶¶ 35-72. Defendants argue that the Speed Trap 2.0 cannot infringe claim 1 of Mr. Procopis' patents because the claim is invalid, and that they are

---

wishes [he] had written it," *see id.*; *see also Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 275 F. App'x 969, 975-76 (Fed. Cir. 2008) (unpublished) (interpreting claims as written even though a "fundamental disconnect exists between the claims and specification" because a court "cannot remedy for Energizer the gulf it has created between the claims and the specification"), and interpret "plurality of poles" to mean two or more poles.

therefore entitled to summary judgment in their favor. Docket No. 35 at 19. "Patent invalidity is an affirmative defense to an action for infringement," requiring the alleged infringer to prove the patent's invalidity by clear and convincing evidence. *Mayborn Group, Ltd. v. Int'l Trade Comm'n*, 965 F.3d 1350, 1355 (Fed. Cir. 2020) (citations omitted). The Court finds that defendants have proven by clear and convincing evidence that claim 1 of Mr. Procopis' patents is invalid. Therefore, the Court will grant summary judgment in favor of defendants on Mr. Procopis' first and second causes of action.

## VI. CONCLUSION

Therefore, it is

**ORDERED** that Defendants Steepware LLC's (d/b/a Eyeline Golf) and Samuel Froggatte's Motion for Summary Judgment Regarding Invalidity of U.S. Patent No. 10,695,641 and U.S. Patent No. 11,344,783 [Docket No. 35] is **GRANTED**. It is further

**ORDERED** that Plaintiff's Motion for Leave to File a Surreply in Opposition to Defendant's Reply in Their Motion for Summary Judgment Regarding Invalidity of U.S. Patent No. 10,695,641 and U.S. Patent No. 11,344,783 [Docket No. 59] is **DENIED**. It is further

**ORDERED** that Plaintiff's Motion for Leave to File a Supplemental Statement of Facts Opposition to Defendant's Motion for Summary Judgment Regarding Invalidity of U.S. Patent No. 10,695,641 and U.S. Patent No. 11,344,783 [Docket No. 62] is **DENIED**. It is further

**ORDERED** that plaintiff Anthony Procopis' first and second causes of action are **DISMISSED**. It is further

**ORDERED** that claim 1 of U.S. Patent No. 10,695,641 and claim 1 of U.S. Patent No. 11,344,783 are declared invalid.  It is further

**ORDERED** that the Joint Motion for Determination [Docket No. 77] is **DENIED** as moot.

DATED January 11, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge