IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-02621-PAB-NRN

ANTHONY PROCOPIS, d/b/a SLOT IT GOLF,

    Plaintiff,

v.

STEEPWARE LLC, d/b/a EYELINE GOLF, and
SAMUEL FROGGATTE,

    Defendants.

---

**ORDER**

---

This matter comes before the Court on the Joint Motion for Determination [Docket No. 77], in which the parties request that the Court construe certain claim terms found in plaintiff's United States Patent No. 10,695,641 ("'641 Patent") and United States Patent Number 11,44,783 ("'783 Patent"). *See generally* Docket Nos. 69, 75, 76. On October 10, 2025, the Court held a claim construction hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Docket No. 102.

### I. BACKGROUND

    **A. Procedural History**

Plaintiff Anthony Procopis initiated this action on October 7, 2022, bringing two claims of patent infringement against defendants Steepware LLC ("Steepware") and Samuel Froggatte. Docket No. 1 at 14-26, ¶¶ 35-72. The complaint alleges that a golf training aid sold by defendants, the "Speed Trap 2.0," infringes claim 1 of the '641 Patent, issued June 30, 2020, and the '783 Patent, issued May 31, 2022, which patents

are owned by Mr. Procopis.  *Id.* at 1-3, 16-17, 22-23, ¶¶ 1-4, 40, 59; Docket No. 1-1 at 2; Docket No. 1-3 at 2.

Defendants filed counterclaims alleging copyright infringement and seeking declaratory judgment regarding claim 1 of Mr. Procopis' patents.  Docket No. 64 at 23-31, ¶¶ 38-65.  Defendants allege that claim 1 of Mr. Procopis' patents are invalid under 35 U.S.C. § 102(a)(1) because these claims are anticipated by the "Speed Trap 1.0," a golf training aid that defendants have sold since 2013.  *Id.* at 18, ¶¶ 18-19; Docket No. 35 at 11, 16.  Defendants allege that claim 1 of Mr. Procopis' patents are therefore invalid and unenforceable against the Speed Trap 2.0.  Docket No. 64 at 11.  Defendants further allege that Mr. Procopis' training aid, the Slot It Golf Swing-Trainer, infringes the Speed Trap 1.0's copyrighted design artwork.  *Id.* at 29, ¶ 57.

On January 27, 2023, defendants filed a motion for summary judgment on their invalidity counterclaims.  Docket No. 35.  They argued that the Speed Trap 1.0 discloses all of the claimed elements of claim 1 of Mr. Procopis' patents, rendering claim 1 of Mr. Procopis' patents invalid.  *Id.* at 10.  They further argued that the Speed Trap 2.0 cannot infringe claim 1 of Mr. Procopis' patents because those claims are invalid and that defendants were therefore entitled to summary judgment in their favor.  *Id.* at 19.  On January 11, 2024, the Court granted defendants' motion for summary judgment.  Docket No. 82 at 14.  The Court found that, because "every element of claim 1 of Mr. Procopis' patents is present in the Speed Trap 1.0, the Speed Trap 1.0 anticipates claim 1 of Mr. Procopis' patents, rendering claim 1 in each patent invalid." *Id.* at 13 (citing 35 U.S.C. § 102(a)(1)).  Accordingly, the Court granted summary judgment in defendants' favor on Mr. Procopis' first and second causes of action.  *Id.* at 14.  In addition, the

2

Court denied the motion seeking leave to file a surreply because the Court did not rely on the prosecution history of the '641 Patent to rule on defendants' motion for summary judgment and denied the motion seeking leave to file a "supplemental statement of facts" because the filing of a supplemental statement of facts is not permitted under the Local Rules or the Court's practice standards. *Id.* at 3 n.2.

On January 30, 2024, Mr. Procopis filed a motion for reconsideration of the Court's order granting defendants' motion for summary judgment. Docket No. 83. Mr. Procopis argued that the Court should not have dismissed all of his infringement claims because, in the infringement contentions that Mr. Procopis served on defendants after they moved for summary judgment, Mr. Procopis asserted infringement of more than just claim 1 of his patents. *See* Docket No. 91 at 5.[1] The Court granted this portion of Mr. Procopis' motion, finding that, "in light of the additional claims asserted in the infringement contentions, defendants' motion for summary judgment was effectively a motion for partial summary judgment, seeking a determination of invalidity of only claim 1 of Mr. Procopis' patents." *Id.* at 7 (internal quotation omitted). The Court therefore amended its summary judgment ruling to dismiss Mr. Procopis' first and second causes of action only insofar as they alleged that the Speed Trap 2.0 infringed claim 1 of his patents. *Id.* at 8.

On July 14, 2023, while defendants' summary judgment motion was pending before the Court, the parties file a joint disputed claim terms chart. Docket No. 68. The chart listed five terms for construction. *Id.* at 3-5. On August 11, 2023, defendants filed

---

[1] Mr. Procopis also argued that the Court erred in holding that claim 1 of Mr. Procopis' patents is invalid. *See* Docket No. 91 at 5. The Court rejected this argument. *See id.* at 8-11.

3

an opening claim construction brief. Docket No. 69.[2] Defendants argued that it was not necessary for the Court to perform any claim construction. *Id.* at 1. On September 15, 2023, Mr. Procopis filed his responsive claim construction brief. Docket No. 75. In it, Mr. Procopis agreed with defendants that the Court did not need to construe the meaning of four of the five terms identified in the claim terms chart. *Id.* at 1-2. Mr. Procopis maintained his request that the Court construe the phrase "along the . . . lines." *Id.* at 2.

At the *Markman* hearing, the parties also agreed that the Court should address an issue raised in the claim construction briefing, *see* Docket No. 69 at 7 n.1; Docket No. 75 at 13-15, regarding the '641 and '783 patents claims' varying use of the terms "exterior" and "external" to refer to certain pole-positioning lines described in the patents.

### B. Patents at Issue

The '641 patent is a utility patent "directed to a golf training aid to help golfers achieve the correct angle-of-attack and straight swing-path 6-inches immediately before and 6-inches immediately after impact with the ball." U.S. Patent No. 10,695,641, col. 4, ll. 22-25. Claim 1 of the '641 Patent describes:

> 1. A golf training aid for practicing swings with an iron and with a driver, the golf training aid comprising:
> U-shaped base having a first arm and a second arm parallel to the first arm, the first arm and second arm being connected at a connecting portion to form a U-shaped structure having an open interior between the first arm and the second arm so that when the base is placed on the ground, the ground is exposed within the open interior, and a plurality of poles, each pole having a base selectively attachable to the U-shaped base, wherein the U-shaped base includes a target line, a pair of **external** pole-positioning **lines**, and a pair of interior pole-

---

[2] In the opening brief, defendants explain that they had invited plaintiff to file the opening claim construction brief, but that plaintiff had declined to do so. *See* Docket No. 69 at 2.

4

>positioning **lines** inside and parallel to the **external** pole-positioning **lines**, whereby the poles are attachable to the U-shaped base **along the** interior pole-positioning **lines** when swings with an iron are to be practiced and wherein the poles are attachable to the U-shaped base **along the exterior** pole-positioning **lines** when swings with a driver are to be practiced.

*Id.*, col. 6, ll. 33-52 (emphasis added).

The '783 patent is a utility patent "directed to a golf training aid to help golfers achieve the correct angle-of-attack and straight swing-path 6-inches immediately before and 6-inches immediately after impact with the ball." U.S. Patent No. 11,344,783, col. 4, ll. 29-32. Claim 1 of the '783 Patent describes:

>1. A golf training aid for practicing swings, the golf training aid comprising:
>a U-shaped base having a first arm and a second arm parallel to the first arm, the first arm and second arm being connected at a connecting portion to form a U-shaped structure having an open interior between the first arm and the second arm so that when the base is placed on the ground, the ground is exposed within the open interior, and a plurality of poles, each pole having a base selectively attachable to the U-shaped base, wherein the U-shaped base includes a target line, a pair of **external** pole-positioning **lines**, and a pair of interior pole-positioning **lines** inside and parallel to the **external** pole-positioning **lines**, wherein the poles are attachable to the U-shaped base **along the** interior pole-positioning **lines** when swings are to be practiced and wherein the poles are attachable to the U-shaped base **along the exterior** pole-positioning **lines** when other swings are to be practiced.

*Id.*, col. 6, ll. 39-58 (emphasis added).

## II. LEGAL STANDARD

Claim construction is a question of law for the court, *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015), guided by Federal Circuit precedent. *See SunTiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1333 (Fed. Cir. 1999). The Federal Circuit has made clear that "there is no magic formula or catechism for conducting claim construction." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (en banc). Several key sources and doctrines should be consulted and applied, but "[t]he sequence of steps used by the judge in consulting various sources is

5

not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." *Id.*

The starting point is the "bedrock principle" that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The words of the claims "'are generally given their ordinary and customary meaning,'" *id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)), which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1313; *see CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("Generally speaking, [courts] indulge a 'heavy presumption' that a claim term carries its ordinary and customary meaning."). In those instances when the claim language "involves little more than the application of the widely accepted meaning of commonly understood words," construction is relatively straightforward, and "the ordinary meaning . . . may be readily apparent even to lay judges." *Phillips*, 415 F.3d at 1314. When the claim terms have a particular meaning in the field, however, courts "look[ ] to 'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'" *Id.* (quoting *Innova*, 381 F.3d at 1116). "These sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Innova*, 381 F.3d at 1116.

The context in which a term is used, both in the asserted claim as well as in other

6

claims of the patent, can be valuable and instructive. *Phillips*, 415 F.3d at 1314. In addition, the patent specification – the text and figures of the patent that precede the claims – "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). With that said, "the claim requirement presupposes that a patent applicant defines his invention in the claims, not in the specification." *Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002); *see PSC Computer Products, Inc. v. Foxconn Int'l, Inc.*, 355 F.3d 1353, 1359 (Fed. Cir. 2004) ("the claims of a patent limit the invention, and specifications cannot be utilized to expand the patent monopoly") (quoting *United States v. Adams*, 383 U.S. 39, 48–49 (1966)).

Although courts may consult extrinsic evidence such as "expert and inventor testimony, dictionaries, and learned treatises," such evidence is "less significant than the intrinsic record," i.e., the specification and prosecution history, and courts must be wary not to use extrinsic evidence to override the meaning of the claim terms demonstrated by the intrinsic evidence. *Phillips*, 415 F.3d at 1317–19 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). That is, "extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

In short, a court must construe the claim terms as they would be viewed by "the ordinary artisan after reading the entire patent." *Id.* at 1321. This is important in order to respect the public notice function of patents:

7

> The patent system is based on the proposition that claims cover only the invented subject matter. As the Supreme Court has stated, "[i]t seems to us that nothing can be more just and fair, both to the patentee and the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent."

*Id.* (quoting *Merrill v. Yeomans*, 94 U.S. 568, 573–74 (1876)).

### III. ANALYSIS

#### A. POSITA

Patent claims are to be construed through the eyes of a person of ordinary skill in the art ("POSITA") at the time of the invention. *Id.* at 1313. The parties' claim construction briefs do not define who would be a POSITA for the patents at issue. At the *Markman* hearing, however, the parties agreed that a POSITA would be a person who is an experienced golfer and who has some experience with golf instructional aides, either through using such aides or through designing or manufacturing such aides. The Court will adopt this definition.

#### B. "Along the . . . lines"

Defendants, in their opening claim construction brief, argue that "along" should be construed as meaning "on." Docket No. 69 at 4. In support of this construction, defendants point to a dictionary definition defining "along" as "at a point on or points on." *Id.* Defendants argue that this definition supports their view that "on" is the plain and ordinary meaning of "along." *Id.* Defendants also argue that the specification repeatedly uses the term "on" to describe the placement of the device's poles with respect to the lines on the device. *Id.* at 4-5. Furthermore, defendants state that the term "along" appears only once in the specification, in a section of the specification stating that "the ball 135 is placed on the ground 130 in the open interior 125 and positions along a line extending from the center line 170." *Id.* at 4.

8

Plaintiff, in his responsive claim construction brief, argues that the term "along" means that the poles are to be placed "on the printed lines on the base or on a line extending from those printed lines." Docket No. 75 at 8. Plaintiff states that the portion of the specification referring to positioning a golf ball "along a line extending from the center line" further shows that the term "along" refers to placement on both the printed line itself and on a theoretical line extending from the printed line. *Id.*

The Court begins with the claim itself and seeks to give the words of the claim their ordinary and customary meaning. *See Phillips*, 415 F.3d at 1312. The Court finds that the ordinary and customary meaning of the word "along" does not support a definition that includes locations both on a printed line and locations on a theoretical line extending from that printed line. Moreover, the Court finds that a POSITA would not understand "along the . . . lines" to include locations on an imaginary line extending from a printed line.[3]

---

[3] Extrinsic evidence from dictionaries also does not support plaintiff's proposed definition. Merriam-Webster dictionary provides three potentially relevant definitions of the preposition "along," each with an example:

1. in a line matching the length or direction of (ex. walking *along* the road)
2. at a point or points on (ex. a house *along* the river)
3. in the course of (ex. made stops *along* the way)

*Along*, Merriam-Webster, https://www.merriam-webster.com/dictionary/along (last visited October 16, 2025). Similarly, the Oxford English Dictionary defines the preposition "along" as meaning "[i]n a continuous line for the length of; in a more or less horizontal line from end to end of; through or over the length of," and provides the example "[o]n a clear day white peaks are visible along the whole alpine arc." *Along*, Oxford English Dictionary, https://www.oed.com/dictionary/along_adj2?tab=meaning_and_use#6379000 (last visited October 16, 2025). The Court finds that none of these examples define an imaginary line or path extending into space, but rather define a more definite line, such as the printed lines described in Mr. Procopis' patents.

To the extent that the meaning of the term "along" is not entirely clear, the Court may look to the specification. *See World Class Tech. Corp. v. Ormco Corp.*, 769 F.3d 1120, 1124 (Fed. Cir. 2014) (citing *Phillips*, 415 F.3d at 1315-16); *see also Phillips*, 415 F.3d at 1315 ("claims must be read in view of the specification. . . . [T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term."). The term "along" is found once in the specification of both the '641 patent and the '783 patent. *See* '641 Patent, col. 4, l. 53; '783 Patent, col. 4, l. 60. In both instances, the term appears as part of a sentence stating that "the ball 135 is placed on the ground 130 in the open interior 125 and positions along a line extending from the center line 170." *See* '641 Patent, col. 4, ll. 52-54; '783 Patent, col. 4, ll. 59-61. The "center line 170" referred to in these sentences is a printed line. *See, e.g.*, '641 Patent Fig. 1; '783 Patent Fig. 1. In the specifications for both the '641 and '783 patents, the term "on" is used with respect to the placement of poles in relation to the positioning lines. *See, e.g.*, '641 Patent, col. 5, ll. 58-59; '783 Patent, col. 3, ll. 46-47.

If Mr. Procopis' proposed construction of the term "along" – meaning "on the printed lines on the base or on a line extending from those printed lines" – is correct, then the drafter of the patent should not have needed to include the phrase "extending from" in the specification to describe where to place the golf ball in relation to the printed line. The fact that the patent uses the phrase "extending from" in the specification, but does not use the phrase "extending from" in claim 1, cuts against Mr. Procopis' proposed construction of "along the . . . lines." Instead, based on the use of the term "on" in the specification to describe the placement of poles "on" the positioning lines, it

10

appears that the patent interchangeably uses the terms "along" and "on." The Court finds that defendants' proposed definition of "along," which is "on," is the proper definition.

### C. "External pole-positioning lines" vs. "Exterior pole-positioning lines"

The claims of Mr. Procopis' patents alternatively use the phrases "external pole-positioning lines" and "exterior pole-positioning lines." *See* '641 Patent, col. 6, ll. 45-46, 51; '783 Patent, col. 6, ll. 51-52, 57. In their opening claim construction brief, defendants argue that the phrase "exterior pole-positioning lines" lacks an antecedent basis and is therefore "invalid as indefinite under 35 U.S.C. § 112." Docket No. 69 at 7 n.1. Mr. Procopis responds that the claims' use of both "external" and "exterior" is a clerical error and asks the Court to correct that error by finding that "exterior" means "external." Docket No. 75 at 13-15. At the *Markman* hearing, Mr. Procopis reiterated his position that the use of both terms constituted a typographical or clerical error, while defendants argued that the varying usages was either a typographical error or there is a lack of an antecedent basis for the term "exterior."

"A district court may correct obvious minor typographical and clerical errors in patents." *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1373 (Fed. Cir. 2022) (internal quotations and citations omitted). "Correction is appropriate only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Id.* (citation and quotation omitted). "The error must be evident from the face of the patent, and the determination must be made from the point of view of one skilled in the art." *Id.* The Court does not find the alternative use of "exterior" and "external" to be a typographical or clerical error, but rather to be the

11

result of poor draftsmanship in the patent.  As such, the Court does not find that it would be appropriate to "correct" the variation.

However, the Court finds that the alternative use of the terms "exterior" and "external" does not affect the validity of the patent.  First, the Federal Circuit has held that different claim terms in the same patent can have the same meaning if they are used interchangeably.  *See Apple Inc. v. Omni MedSci, Inc.*, 2024 WL 3084509, at *3 (Fed. Cir. June 21, 2024).  The Court finds that the terms "exterior" and "external" are used interchangeably in Mr. Procopis' patents and that the terms have, for the purposes of these patents, the same meaning.[4]  Second, the Court finds that the "lack of an antecedent basis" argument does render the patents invalid as indefinite.  As the Federal Circuit explained in *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001), the Manual of Patent Examining Procedure ("MPEP") states that "the failure to provide explicit antecedent basis for terms does not always render a claim indefinite.  If the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite."  Although *Bose* cited a 1995 version of the MPEP, *see id.*, the current version of the MPEP contains the same language.  *See* MPEP § 2173.05(e) (9th ed. Rev. 1, Nov. 2024).  The Court finds that, even if the term "exterior" lacks an antecedent basis in the patents, the scope of the claim would still be reasonable

---

[4] At the *Markman* hearing, defendants offered an example of how "external" and "exterior" may have different meanings: a wall is on the exterior of a house, while a propane tank is external to a house.  Although the Court agrees that, in situations such as the one offered by defendants, the two terms may have different meanings.  The Court finds, however, that in the context of this patent, which contemplates lines on a device, there is no apparent distinction between the terms "external" and "exterior."

12

ascertainable by a POSITA.  Thus, the Court finds that the claim is not invalid as indefinite.  *See Bose*, 274 F.3d at 1359.

## IV.  CONCLUSION

It is therefore

**ORDERED** that the Joint Motion for Determination [Docket No. 77] is **GRANTED**. It is further

**ORDERED** that the disputed claim terms will be construed as indicated above.  It is further

**ORDERED** that the parties shall file a joint status report, on or before **December 1, 2025**, informing the Court of their views on the appropriate next steps to be taken in this case.

DATED October 31, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge